### No. ——
### First Circuit

---

## MATTE v. MATTE

---

(February 15, 1928. Opinion and Decree.)

---

(*Syllabus by the Editor*)

1. Louisiana Digest—Elections by the People—Par. 42, 66.

Where the evidence shows that a ballot-box was kept· for several hours while in charge of a deputy sheriff in a locked room close to which slept a man who would have known if anyone had entered the room during the night, and, upon opening the box, it was found that none of the seals had been tampered with; held, that all the time the box was within the custody of deputy sheriff and ballots should be counted as valid.

Appeal from the Parish of Acadia. Hon. W. W. Bailey, Judge.

Action by Pierre J. Matte against Etienne Matte.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Philip S. Pugh and Dennis T. Canaan, of Crowley, attorneys for plaintiff, appellee.

Percy T. Ogden, of Crowley, attorney for defendant, appellant.

ELLIOTT, J. This contest between Pierre J. Matte and Etienne Matte involves the nomination for constable of the Third Ward of the Parish of Acadia, at the Democratic Primary Election held on January 17th, 1928.

Etienne Matte was returned by the commissioners of election as having been nominated and Pierre J. Matte brought suit to have the result set aside and himself declared the nominee. His principal ground of contest is that a certain number of ballots held as invalid by the commissioners at the Adolphe Miller Box, in Precinct 2, and not counted, were good ballots as to constable and should have been counted as to that office. That said ballots being counted gave him a majority and made him the rightful nominee. The ballots were recounted by the District Court on the trial of the case and they showed that plaintiff was nominated by a majority of seven (7).

The evidence shows that Precinct 2, known as the Adolphe Miller Box, is located at the residence of Allen Laughlin, and in one of the front rooms of a house forming part of his residence. There are two houses forming his residence. They are not under the same roof nor embraced within the same walls but they are within two or three feet of each other and connected by a platform which leads from the door of one into the door of the other. The two are in fact but one residence, Mr. Laughlin and the females constituting his family sleeping in one, while Emile Miller, an elderly and unmarried brother-in-law, sleeps in the main room of the other.

This room in which Emile Miller sleeps and which is his bedroom at night, is the room in which the election was held; it forms the precinct in question.

After the election was held, the votes counted and the returns signed, the box with all the ballots in it was closed and properly sealed and left on the table in the room in question, and in the charge and custody of Allen Laughlin, deputy sheriff at that precinct. This was about

half past two on the morning after the election. The commissioners then left, and Allen Laughlin, deputy sheriff, remained in custody of the box in this room on his premises. The deputy sheriff latched and hooked all the doors and windows opening into this room except one, the one that opened on the platform which led to the room in the house in which he slept with the balance of his family. The room in which the election was held was latched from the inside, and when Mr. Laughlin, the deputy sheriff, left the room in order to enter the one in which he slept, Emile Miller remained in it with the box on the table, latched the door on the inside, and went to bed in the room. Emile Miller remained in the room with the box until about five-thirty A. M. on the 18th, after which Mr. Laughlin may well be said to have had the box within his view for the balance of the day until it was called for by the commissioners and carried by them to Crowley and deposited with the clerk of court. The occupancy of the room by Emile Miller until he was awakened the next morning at half-past five, when he unlatched the door and came out, and the leaving of the box in the room until brought to Crowley, are urged by the defendant as the reason why the box should not have been opened and the ballots counted. The contention is that it was in the hands of an unauthorized person, and could have been tampered with. The trial court did not accede to this contention and held that the box could be opened and the ballots counted, and we have come to the same conclusion.

The place where the box was kept was, of course, not in the sight of Allen Laughlin, deputy sheriff, during the few hours that elapsed between the completion of the count and five-thirty on the morning of January 18th, and during which time Emile Miller used the room as a bedroom. The room in question was part of the residence of the deputy sheriff. It was fastened up from the inside, and no one on the outside could or did enter it. Emile Miller unlatched the door the next morning when he got up. The location and fastening of the room was such that nobody could have access to it except in the way stated, and entry into the room was all the time in view of the deputy sheriff, although, of course, he was not looking at it while asleep. In such a situation the box could not have been tampered with by anybody except Emile Miller, and the evidence shows that he cannot read or write, and he testifies that he did not touch the box and that nobody else did, and the evidence further shows that nobody else entered or could have entered the room. The box may not have been in the physical possession of the deputy sheriff, but it was in his possession as much as if it had been in his hands. The commissioners recognized that the fastenings and seals on the box had not been changed.

In view of these facts and circumstances we see no reason for holding that this box should not be held to have been all the time within the custody of the deputy sheriff, and therefore it could be opened and the ballots counted as was done in the lower court.

The judgment appealed from is therefore affirmed.